Thomas J. MARZEN, Plaintiff-Appellant,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., Defendants-Appellees.

No. 86–1768.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1987.

Decided Aug. 3, 1987.

As Amended Sept. 1, 1987.

 

Clarke D. Forsythe, Americans United for Life Legal Def. Fund, Chicago, Ill., for plaintiff-appellant.

Harold J. Krent, Civ. Div. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

BAUER, Chief Judge.

The question presented is whether the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requires the defendants to disclose four records from an investigation conducted by the Office for Civil Rights ("OCR") of the Department of Health and Human Services ("HHS") into possible discrimination against "Infant Doe", a child born in Bloomington, Indiana with Down's syndrome and a blocked esophagus. Resolution of this question depends on whether the records are exempt within the meaning of Exemptions 5, 6, 7(A) and 7(C) of FOIA. The district court held that the documents may not be disclosed, 632 F.Supp. 785 (N.D. Ill.1986). We affirm, but on different grounds.

## I.

The baby identified in the documents as Infant Doe was born April 9, 1982, in Bloomington Hospital, Bloomington, Indiana. At birth, the baby was diagnosed as having Down's syndrome and a defective esophagus. Two doctors recommended surgery to correct the blocked esophagus, but the parents decided against surgery or any other treatment, except sedation as necessary. An emergency hearing was held before Judge John G. Baker of the Monroe County Circuit Court. The hospital asked the court to issue a declaratory judgment concerning the proper course of treatment for Infant Doe. Dr. Walter Owens, the delivering physician, testified that he and two other doctors concurred that the recommended course of treatment should be "basic techniques to aid in keeping the child comfortable and free of pain because the possibility of a minimally adequate quality of life was nonexistent due to the child's severe and irreversible mental retardation." Dr. James Laughlin, a pediatrician on staff at Bloomington Hospital, disagreed, testifying that he "knew of instances where a child suffering from Down's syndrome had a reasonable quality of life." The infant's father testified that he had been a public school teacher for over seven years, that he had worked with Down's syndrome children, and that he and his wife felt that minimally acceptable quality of life was never present for a child suffering from such a condition.

At the conclusion of the hearing, Judge Baker held that the parents have the right to choose a medically recommended course of treatment for their child. In his written declaratory judgment dated April 12, 1982, Judge Baker appointed the Monroe County Department of Public Welfare ("MCDPW") as guardian *ad litem* for Infant Doe to determine whether to appeal his judgment. That same day, the six-member Child Protection Team of the MCDPW met at Bloomington Hospital to determine whether to appeal Judge Baker's decision. Also present were four Bloomington doctors who had examined Infant Doe, the parents of another Down's syndrome child, and an attorney for Infant Doe's parents. No minutes or records of this meeting were kept by the MCDPW. After deliberating for about an hour, the members of the Child Protection Team decided not to appeal Judge Baker's decision. Nonetheless, Judge Baker appointed Philip C. Hill, a Bloomington attorney, as guardian *ad litem* to appeal his ruling. Mr. Hill filed a petition for a temporary restraining order to provide treatment for Infant Doe, which Judge Baker denied.

The county prosecutor then sought an order from the Monroe County Circuit Court, that the MCDPW take immediate custody of Infant Doe and provide emergency treatment. This action was taken pursuant to Indiana Code 31–6–4–10, under which a county prosecutor or county department of public welfare may file a petition to declare a child to be "a child in need of services" (referred to as a "CHINS" petition). Under this statute, a "child in need of services" includes a child "whose physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parent, guardian or custodian to supply the child with necessary food, clothing, shelter, medical care, education or supervision." I.C. 31–6–4–10. Dr. Laughlin and Mr. Hill asked the county prosecutor to file the CHINS petition because the MCDPW

had already concluded that the parental decision was not wrongful.

The CHINS petition stated that Infant Doe's life was endangered by the refusal of his parents to provide necessary medical care and was supported by affidavits from both Dr. Laughlin and Dr. Schaffer. Finally, Mr. Hill, as guardian *ad litem* for Infant Doe, and the county prosecutor, sought a writ of mandamus from the Indiana Supreme Court to order the Monroe County Circuit Court to treat the child.

On April 14, 1982, Judge Spencer denied the county prosecutor's petition for an order declaring Infant Doe to be "a child in need of services" under the Indiana Law because "the State has failed to show that this child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parents to supply the child with necessary food and medical care." Also on that day, the Indiana Supreme Court denied the petition for a writ of mandamus. Infant Doe died at 10:03 p.m. on April 15, 1982. The Indiana Supreme Court sealed all records the next day.

The OCR, pursuant to its responsibility under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, investigated possible violations of that Act by recipients of federal funds. The investigation focused on Bloomington Hospital and the MCDPW, both of which had received HHS funds. The MCDPW supplied documents to the OCR after OCR stressed that the confidentiality of the records would be protected pursuant to OCR regulations, and after the Chief Justice of the Indiana Supreme Court had issued an order allowing the MCDPW to turn the documents over to HHS and ordering HHS to keep them confidential.

OCR's investigation of the Infant Doe incident was completed without a recommendation for the initiation of enforcement proceedings under the Rehabilitation Act. The Bloomington Hospital took the position that "it did everything within its power to obtain authority to see that surgery was provided." The MCDPW took the position that, because the Indiana courts decided that Infant Doe was not a "child in need of services" under Indiana law, they could not be shown to have withheld services discriminatorily.

Two developments occurred which affect the determination of whether the MCDPW achieved compliance with the Rehabilitation Act. First, the Indiana legislature amended its child abuse and neglect law to add to Indiana Code 31–6–4–3 the following:

> A child in need of services includes a handicapped child who is deprived of nutrition that is necessary to sustain life, or who is deprived of medical or surgical intervention that is necessary to remedy or ameliorate a life-threatening medical condition, if the nutrition or medical or surgical intervention is generally provided to a similarly situated handicapped or nonhandicapped child.

Second, the Indiana Department of Public Welfare adopted procedures and methods of administration in compliance with 45 C.F.R. § 84.55(c), a regulation designed to assure that county public welfare departments use their statutory authority to prevent instances of medical neglect of handicapped infants. These newly adopted procedures incorporated the state statutory amendment and all of the elements specified in 45 C.F.R. § 84.55(c). Because the Director of the MCDPW assured OCR that the MCDPW was functioning in accordance with the new procedures, OCR's investigation ended.

Plaintiff, Thomas Marzen, general counsel of the National League Center for the Medically Dependent and Disabled in Indianapolis, Indiana, brought suit seeking to compel the defendants to disclose four documents: (1) medical records of Infant Doe from Bloomington Hospital; (2) the report of the Monroe County Circuit Court from the Director of the MCDPW; (3) a roster of the members of the Child Protection Team; and (4) a draft of the Investigative Report. The district court held that the documents are exempt under FOIA Exemptions 5, 6, 7(A) and 7(C), and additionally held that documents one through three may not be disclosed because they are not "agency records" within the meaning of FOIA. For

the reasons stated below, we hold that the documents are exempt under FOIA.

## II.

Before turning to an examination of the four specific documents, a brief overview of the relevant statutory framework may be helpful. The purpose of FOIA is to allow public access to official information unnecessarily shielded from public view, *see EPA v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). FOIA provides that government agencies shall make available to the public a broad spectrum of information, but provides for nine exemptions from compelled disclosure. In so doing, the Act expressly recognizes that public disclosure is not always in the public interest. *Baldrige v. Shapiro*, 455 U.S. 345, 352, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199 (1982). These exemptions are "intended to set up concrete workable standards for determining whether particular material may be withheld or must be disclosed." *EPA v. Mink*, 410 U.S. at 79, 93 S.Ct. at 832. While the Act is broadly conceived, its success lies in "providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965). It is in this context that the conflicting claims over the documents in this case must be considered.

## III.

■ The plaintiff argues that the privacy interest asserted here must be analyzed under the traditional common law right of privacy doctrine. Marzen relies on Prosser, *Law of Torts* § 117 at 804–14 (4th ed. 1971) to support his argument that the common law privacy doctrine applies here. Noting that "public disclosure of embarrassing private facts about the plaintiff" is protected under the common law privacy doctrine, he nonetheless argues that the Doe's are not protected. By characterizing Infant Doe's parents as public figures, he argues that they enjoy only a limited privacy interest. As an alternative, he argues that the Doe's privacy would be protected

by redaction of identifying characteristics from the documents. First, we disagree with the plaintiff's characterization of Infant Doe's parents as public figures. Their identity has not been disclosed to the public. In addition, their insistence on anonymity negates any finding of public figure status. Moreover, instances of "involuntary" public figures are "exceedingly rare." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974). Second, plaintiff's argument that redaction of identifying characteristics would protect the Doe's privacy is specious. Many persons have already learned the identity of the parents. For example, it has been disclosed that the family formerly lived in Bloomington, Indiana; that they had two other children; and that the father had been a teacher in the Bloomington School system for seven years. From all this information, it is probable that neighbors, relatives, friends and co-workers have deduced their identity. If the documents are disclosed, many would learn the intimate details connected with the family's ordeal.

■ Although the common law doctrine of privacy may assist analysis, the privacy exemption under FOIA is not designed to prevent what would be tortious at common law. Congres intended that the privacy interest protected under FOIA extend beyond the common law. Since the inception of FOIA, courts have accorded recognition to privacy interests in a variety of contexts. As the court stated in *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 n. 5 (3d. Cir.1980):

Privacy ... is control over knowledge about oneself. But it is not simply control over the quantity of information abroad; there are modulations in the quality of the knowledge as well. We may not mind that a person knows a general fact about us, and yet feel our privacy invaded if he knows the details. For instance, a casual acquaintance may comfortably know that I am sick, but it would violate my privacy if he knew the nature of the illness. Or a good friend may know what particular illness I am

suffering from, but it would violate my privacy if he were actually to witness my suffering from some symptom which he must know is associated with the disease. (*quoting* Fried, *Privacy*, 77 Yale L.J. 475, 483 (1968)). *See also, Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977); *Miller v. Bell*, 661 F.2d 623 (7th Cir.1981); *Blast v. Department of Justice*, 665 F.2d 1251 (D.C.Cir.1981). A separate body of privacy law has developed under FOIA in which courts seldom look to the common law for more than an analytical framework.

In 1974, Congress amended the FOIA provisions governing the role of a reviewing court in considering claimed exemptions. Prior to 1974 investigatory files compiled for law enforcement purposes were deemed entirely exempt from disclosure. *See, Center for National Policy Review on Race and Urban Issues v. Weinberger*, 502 F.2d 370, 372 (D.C.Cir. 1974). The 1974 amendments narrowed this broad grant of exemption by limiting its application to particular types of information within the investigatory file. Congress was concerned, however, that personal privacy and confidentiality be preserved by means of exemptions 5, 6 7(A) and 7(C), those at issue in this suit. This right to be left alone stems from the broad privacy right protected by FOIA and extends beyond common law rights of action.

## IV.

■ As a threshold matter, we note the discussion by the district court that documents one through three are not "agency records" within the meaning of FOIA. The court reasoned that, because HHS' investigation was unauthorized (*United States v. University Hospital*, 729 F.2d 144 (2d Cir. 1984)), any documents generated in the course of the investigation are not properly considered "agency records". We decline to decide whether the documents in question are "agency records" because however they were obtained—whether in good faith, or by theft in clear contravention of the law—they are exempt under Exemption 7(A), 5 U.S.C. 552(b)(7)(A), which protects against release of investigatory records whose production could interfere with enforcement proceedings.

In addition, strong public policy interests mandate that these documents not be disclosed to the public. On April 16, 1982, the Supreme Court of Indiana sealed the records at issue. On April 26, 1983, it released the documents to HHS with the express proviso that they be kept in confidence. Because the pledge of confidentiality was necessary to obtain the records, we give great weight to the finding that disclosure would invade privacy, and that this promise to the Supreme Court of Indiana should be honored. Finally, we turn to the documents at issue.

## V.

### Infant Doe's Medical Records—Document 1

■ Although most of the salient facts concerning Infant Doe's short life have been disclosed to the public, the plaintiff seeks access to the intimate detailed medical records which chart the infant's deteriorating condition, conversations between his parents and doctors, and the anguished reactions of the infant's parents. The plaintiff argues that disclosure of the medical records is critical both to overseeing HHS' discharge of its responsibilities and to ensure that the public is fully informed. He further argues that full disclosure of the medical records will enable policy makers to formulate prudent policy in the future. After viewing the medical records *in camera*, the district court concluded:

> [P]laintiff has not demonstrated adequately that *any* issue in the public policy debate turns on any information available in the medical records but not already disclosed to the public or that any withheld medical record would contribute to the public's oversight of OCR's role in the matter.

District Court Opinion at 62.

We agree with the district court that the plaintiff failed to establish a nexus between the release of the medical records and the public debate. While it is true that

the circumstances surrounding the life and death of Infant Doe are of substantial public interest, release of the intimate details contained in the medical records would not appreciably serve the ethical debate since most of the factual material concerning the details of the case, including the final HHS report are already in the public domain. Disclosure would almost certainly cause Infant Doe's parents more anguish, and would undermine HHS' pledge to keep its records confidential.

Infant Doe's medical records are exempt from disclosure under FOIA exemption 6, which "protects personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasions of personal privacy." In addition, disclosure is prohibited by the less stringent balance of FOIA Exemption 7(C), which "protects against disclosures that constitute an unwarranted invasion of personal privacy."

In denying disclosure, we balance the public's broad right to information guaranteed under FOIA against the privacy rights which Congress intended to protect under the nine FOIA exemptions. Under this analysis, we agree with the district court that whatever public interest can be gained from disclosure of the intimate details contained in the medical records cannot justify the invasion of the parents' right to privacy.

### Documents 2 and 3

██ Document 2 is a two page report of the MCDPW Child Protection Team submitted to the Monroe County Circuit Court. It is a sworn statement by the director of the MCDPW which describes the hearing held by the Child Protection Team to determine whether to appeal Judge Baker's ruling, and includes the names of the team members. Document 3 consists of names and addresses of the Child Protection Team members. The plaintiff argues that the names of Team members under documents 2 and 3 should be disclosed because county public officials have no legitimate expectation that their identities in their public capacity will not be a matter of public knowl-

edge. Marzen submits that public knowledge of the identities of Team members generally will enable the public to review their qualifications and to propose guidelines for the qualifications of Team members.

The district court held that the names of the Child Protection Team Members found in documents 2 and 3 are exempt under FOIA exemption 7(A), but are not exempt under FOIA exemptions 6 and 7(C). We uphold nondisclosure of the names under documents 2 and 3, but for differing reasons than the district court advanced. The district court reasoned that the disclosure of the names of public officials who are working in their official capacities goes to the heart of the basis for the FOIA—the right to know how public officials are conducting the affairs of government. Here, though, special reasons dictate that the names be withheld. First, although we agree that the public is ordinarily entitled to know the identities of officers who function on behalf of the public, Ind.Code Ann. § 31–6–11–18(b) provides for the opposite result, to protect the privacy of the people. Second, the records were made available to HHS on the condition of confidentiality.

### Document 4

██ Document 4 is the draft version of the Investigative Report. Plaintiff asks that the government disclose portions of the substantive facts contained in the records which are not "inextricably intertwined" with the revelation of the deliberative process." See EPA v. Mink, 410 U.S. 73, 89–91, 93 S.Ct. 827, 837–38, 35 L.Ed.2d 119 (1973). The district court held that document 4 is entirely exempt as a draft submitted through a comment and clearance process. See Russell v. Department of the Air Force, 682 F.2d 1045, 1048–49 (D.C.Cir.1982). We agree. The draft contains significant excerpts from the medical records, which we have held are exempt from disclosure. It further contains an entire section of conclusions. Exemption 5 protects inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency

in litigation with the agency. This exemption protects not only the opinions, comments and recommendations in the draft, but also the process itself. *See Playboy Enterprises, Inc. v. Department of Justice,* 677 F.2d 931, 935–36 (D.C.Cir.1982). We uphold the nondisclosure of the preliminary draft under Exemption 5. For the foregoing reasons, the judgment of the district court is

AFFIRMED.