**UNITED STATES DEPARTMENT OF the AIR FORCE, SCOTT AIR FORCE BASE, ILLINOIS, Petitioner, Cross-Respondent,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent, Cross-Petitioner.**

Nos. 87–1143, 87–1272.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1987.

Decided Jan. 27, 1988.

Rehearing and Rehearing En Banc Denied March 29, 1988.

Al J. Daniel, Jr., Civil Div., Dept. of Justice, Washington, D.C., for petitioner, cross-respondent.

William E. Persina, Federal Labor Relations Authority, Joseph Henderson, Washington, D.C., for respondent, cross-petitioner.

Before FLAUM and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

EASTERBROOK, Circuit Judge.

The American Federation of Government Employees (the Union), representing some civilian employees at Scott Air Force Base, wants the home addresses of non-members so it can communicate with them—to induce them to join or to learn their desires so it can better represent them whether they join or not. The Air Force offered to distribute the Union's messages to each employee's desk in sealed envelopes, and an administrative law judge concluded that this would afford satisfactory access. The Federal Labor Relations Authority disagreed, applying a rule it announced in *Farmers Home Administration Finance Office, St. Louis, Missouri*, 23 F.L.R.A. 788 (1986) (*FHAFO*). The FLRA concluded that withholding the home addresses is an unfair labor practice under 5 U.S.C. § 7114(b)(4), which it ordered the Air Force to cease. We must decide whether *FHAFO* correctly applies exemption 6 to the Freedom of Information Act, 5 U.S.C. § 552(b)(6).

Section 7114(b)(4) requires a federal employer to furnish a union with "data" that are "reasonably available and necessary

* The Honorable Robert A. Grant, of the Northern District of Indiana, sitting by designation.

for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining ... to the extent not prohibited by law". The Authority concluded that knowing and being able to reach employees facilitates the "discussion, understanding, and negotiation" of matters subject to collective bargaining, a determination within its discretion. *Department of Health and Human Services v. FLRA*, 833 F.2d 1129, 1131–32 (4th Cir.1987) (relying on cases decided under the National Labor Relations Act). The principal disputes concern whether home addresses are "necessary" to this purpose, in light of alternative channels of communication, and whether the release of such information without the consent of each employee is "prohibited by law". The pertinent "law" is the Privacy Act, 5 U.S.C. § 552a, which forbids the unconsented disclosure of personal information found in a governmental system of records, unless an exception applies. One exception is that documents covered by a "routine use" notice may be revealed routinely. 5 U.S.C. § 552a(b)(3). Another is that documents may be revealed when the Freedom of Information Act so requires, see § 552a(b)(2). The FOIA requires agencies to release home addresses unless they come within exemption 6, which covers records the public availability of which "would constitute a clearly unwarranted invasion of personal privacy".

The FLRA concluded that access to home addresses is "necessary" because the delivery of union materials to employees at work may expose them to pressure. If they read the information on the spot, they may be accused of neglect of duty or subject to inquiry by supervisors; if they take it home unopened or throw it away, this may raise the eyebrows of fellow employees who fear they possess insufficient sympathy for the common cause. Although delivery at work might be sufficient at some times and places—as the ALJ found it would be at Scott Air Force Base—the Authority feared that the task of drawing lines case by case would be time consuming and imprecise. The employer could drag out the decision for years, and in the end

the decision would not necessarily be accurate. Only a presumptive rule, the Authority thought, had reasonable prospect of effective, expeditious administration. The Authority relied both on the "routine use" exemption to the Privacy Act and on its interpretation of exemption 6 to the FOIA in concluding that disclosure was not prohibited by law. It allowed that "[d]isclosure need not be made in situations where, for example, the evidence discloses that a union has acted in a manner which leads to the conclusion that the employees whose addresses would be disclosed would be in imminent danger if the union knew where they lived" (23 F.L.R.A. at 798), a problem the Authority did not detect in *FHAFO* or at Scott Air Force Base.

The Department of Justice, representing the Air Force and governmental employers in approximately 100 similar cases pending throughout the country, attacks *FHAFO* at every point. Disclosure is not necessary because of alternative means of communication; at the least there should be case by case decisions on the "necessity" question; if disclosure is necessary to something, that something is not the "collective bargaining" defined by 5 U.S.C. § 7103(a)(12); the routine use notice on which the FLRA relies refers the agency to FOIA principles and so is not really "routine"; and exemption 6 to the FOIA itself, the Department submits, treats the release of home addresses as unwarranted invasions of personal privacy.

Two courts have addressed one or more of these issues. *AFGE, Local 1760 v. FLRA*, 786 F.2d 554 (2d Cir.1986), holds that the FOIA requires governmental employers to release home addresses to unions; because the union could enforce the FOIA by independent suit, the Second Circuit did not consider the "necessity" issue peculiar to labor law. *Department of Health and Human Services v. FLRA*, *supra*, concluded that the Authority is entitled to find release of the information "necessary" and avoided deciding whether the FOIA would compel release independently of § 7114(b)(4). The Fourth Circuit earlier had held that the FOIA does not require

the government to release home addresses to unions in independent litigation. *AFGE, Local 1923 v. Department of Health and Human Services,* 712 F.2d 931 (4th Cir. 1983). Invoking the discretion of the FLRA enabled the Fourth Circuit to finesse its earlier decision. We may put on the other side, at least in spirit, decisions such as *Wine Hobby USA, Inc. v. IRS,* 502 F.2d 133 (3d Cir.1974), holding that exemption 6 permits the IRS to withhold a list of home addresses of persons who had paid the tax to make wine at home; the Third Circuit thought that home addresses were too private to be exposed for the sake of one (a publisher of a winemaking magazine) who wanted to propose a "mere" commercial transaction.

We agree with the Second Circuit and therefore enforce the FLRA's order without reaching the issues under § 7103(a)(12), § 7114(b)(4), and the routine use exemption to the Privacy Act. Because most arguments pro and con have been ventilated in published opinions and scholarly writings—e.g., Anthony T. Kronman, *The Privacy Exemption to the Freedom of Information Act,* 9 J. Legal Studies 727, 741–48 (1980) (criticizing *Wine Hobby*)—we set out an outline of our reasons.

■ Exemption 6 permits the government to withhold information that would create a "clearly unwarranted invasion of personal privacy". The FOIA's status as a disclosure law has led the Supreme Court to read this with strong emphasis on "clearly unwarranted". *Department of the Air Force v. Rose,* 425 U.S. 352, 360–62, 372–73, 378–79 & n. 16, 96 S.Ct. 1592, 1598–1600, 1604–05, 1607 & n. 16, 48 L.Ed. 2d 11 (1976). It is hard to see how the disclosure of home addresses could be "clearly unwarranted" as a rule. Most home addresses are in the telephone book, freely available to anyone interested. They are widely disseminated on mailing lists. And the mail that comes in response does not substantially impinge on seclusion; the addressee may send it to the circular file. Both the secrecy and the seclusion components of privacy therefore are minuscule here. The willingness of most persons to make their home addresses accessible to strangers is a telling datum in any effort to discern whether release of the same information by the government "clearly" produces an "unwarranted" invasion of privacy. See *Department of State v. Washington Post Co.,* 456 U.S. 595, 602–03 n. 5, 102 S.Ct. 1957, 1962 n. 5, 72 L.Ed.2d 358 (1982).

There are of course exceptions. Some people have unlisted numbers. Some people in the phone book would not be there if their names could be associated with their occupations. We doubt that operatives of the CIA, or even agents of the FBI or guards of federal prisons, want to reveal their home addresses to those who may have scores to settle. A request for the home addresses of prison guards might create the risk of a "clearly unwarranted" invasion of privacy. Felons might use the addresses to retaliate, though sellers of home security systems might use the addresses for beneficent purposes; the net effect is hard to evaluate. The FLRA said much the same thing when it reserved decision on the disclosure of home addresses to unions with unsavory reputations. So, too, we held in *Marzen v. Department of Health and Human Services,* 825 F.2d 1148, 1152–54 (7th Cir.1987), that the names and addresses of a medical committee could be withheld when disclosure might lead to harassment of the members. The Air Force does not suggest, however, that any of its civilian employees at Scott Air Force Base faces a risk of unpleasant encounters or attention as the result of the release of home addresses.

Even a modest disclosure could be "clearly unwarranted" if there were no reason for it. Incurring a harm for no gain is "clearly unwarranted". Thus *Rose* and other cases require courts to compare the benefits and detriments of disclosure. In *Wine Hobby* the court treated the benefit of disclosure as nil because the requestor, a magazine, simply wanted to ask the winemakers to subscribe. This commercial transaction was entitled to no status as a benefit, the court thought. The Air Force wants us to put the Union's request in the same category. More, the Air Force observes that the Union has an alternative—

mailing information to employees at their desks—that makes the home addresses less valuable to the Union than they would be if there were no alternative method of reaching the employees.

 The disposition of *Wine Hobby*, like the Air Force's request that we consider alternative methods open to the Union, invites attention to the *requestor's* proposed use. Today's requestor is turned down; another requestor, with a different use, or a higher cost of obtaining the data (or accomplishing its ends in other ways), might have its request granted. Each invites us, as well, to decide whether the use in question is good or bad, to approve the one yet condemn the other. For ourselves, we see no evil in proposing commercial transactions. Each party to a commercial transaction perceives himself to be better off, and sneering at these gains by adding "mere" to them does not make them go away. Perhaps there are reasons why the government should not compete with sellers of commercial mailing lists—if only because the agency's inability to charge for the real costs of compiling the lists would make them uneconomically cheap and lead to over-use—but these have not been expressed in exemption 6.

At all events, none of these considerations is important. The FOIA says that "any person" may obtain information. 5 U.S.C. § 552(a)(3). Either all requestors have access, or none do. The special needs of one, or the lesser needs of another, do not matter. *FBI v. Abramson*, 456 U.S. 615, 631, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975). The first person to get the information may give it away; so if one person gets it, "any person" may. "[T]he Act clearly intended to give any member of the public as much right to disclosure as one with a special interest therein." *Sears*, 421 U.S. at 149, 95 S.Ct. at 1515. The balancing therefore must be conducted at a more general level. Do the several uses to which many people would put the information justify its release? And the dispositive inquiry is whether

there are legitimate uses, not whether we think them noble or tacky. We agree with *Reporters Committee for Freedom of the Press v. Department of Justice*, 831 F.2d 1124, 1126 (D.C.Cir.1987) (footnote omitted):

> We do not believe that the phrase "public interest" as used in the balancing in Exemptions 6 and 7(C) of the Act, means anything more or less than the general disclosure policies of the statute. Since Congress gave us no standards against which to judge the public interest in disclosure, we do not believe Congress intended the federal judiciary—when applying only Exemptions 6 and 7(C) of the Act—to construct its own hierarchy of the public interest in disclosure of particular information.... [A court should balance interests only to] consider whether there is a cognizable privacy interest in the information sought, and then appraise the impairment to that interest that would result from disclosure.

The privacy interest at stake here is slight; so too is the impairment. There are legitimate uses for home addresses; the Union proposes one such use. It is accordingly irrelevant that unions may have an alternative in sending packets to workers at the office.

 The Union would prevail in a suit under the FOIA, just as the Second Circuit concluded. It would be silly to hold the FLRA to a higher standard of "necessity" than the one prevailing in civil litigation. The unfair labor practice order therefore must be enforced. Having said this, we hope that the Air Force and the Union compose their dispute. Both should have the interests of the employees at heart, and some employees may dislike the Union's knowing their home addresses. The parties did not propose, and the FLRA did not consider, a middle ground under which each employee would receive a form with a request to check off whether he would like to receive the Union's mail at home or at the office (perhaps with the proviso that the Union would receive the home addresses of those who do not return the form). Such an alternative might protect everyone's legitimate interests. Ours is not to

split the baby but to pass on the legality of the FLRA's decision, however, and that decision must be

ENFORCED.