975 F.2d 348
 141 L.R.R.M. (BNA) 2275
 UNITED STATES DEPARTMENT OF the NAVY, NAVY EXCHANGE, NAVAL
TRAINING STATION, NAVAL HOSPITAL, GREAT LAKES,
ILLINOIS, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
UNITED STATES DEPARTMENT OF the NAVY, NAVY EXCHANGE, NAVAL
TRAINING STATION, NAVAL HOSPITAL, GREAT LAKES,
ILLINOIS, Respondent.
 Nos. 90-3314, 90-3178.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 22, 1992.
Decided Sept. 16, 1992.
As Amended Sept. 29, 1992.
 
 Sandra Wien Simon, Dept. of Justice, Civil Div., Leonard Schaitman, William Kanter, Lori M. Beranek (argued), Dept. of Justice, Civil Div., Appellate Section, Washington, D.C., Thomas Wood, Dept. of Navy, Office of Civilian Personnel Management, Philadelphia, Pa., for U.S. Dept. of Navy, Navy Exchange, Naval Training Station, Naval Hosp., Great Lakes, Ill.
 William E. Persina, William R. Tobey, Pamela P. Johnson (argued), Federal Labor Relations Authority, Washington, D.C., for Federal Labor Relations Authority.
 Gregory O'Duden, Elaine Kaplan (argued), National Treasury Employees Union, Washington, D.C., for amicus curiae Nat. Treasury Employees Union.
 Before COFFEY and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 The Federal Labor Relations Authority ("FLRA") seeks enforcement of its September 28, 1990 order finding that petitioner, the United States Department of the Navy, Navy Exchange, Naval Training Station, Naval Hospital, Great Lakes, Illinois ("Navy"), committed an unfair labor practice when it refused to release to its employees' exclusive representative, the Service Employees International Union, Local 11 ("Union"), the names and home addresses of all bargaining unit employees. U.S. Department of the Navy, Navy Exchange, Naval Training Station, Naval Hospital, Great Lakes, Illinois and Service Employees International Union, Local 11, 37 F.L.R.A. (No. 59) 737 (1990). The Navy petitioned for review of the order.
 
 
 2
 The FLRA and the Union claim that without the requested names and home addresses the Union cannot effectively communicate with the employees and consequently cannot fulfill its statutory duty of representation. In its order, the FLRA ruled that the Navy's refusal to release the information was an unfair labor practice under the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 ("the Labor Act"), which governs collective bargaining in the public sector. Specifically, the FLRA claims the Union is entitled to the information under the Labor Act provision which requires federal agencies
 
 
 3
 "to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data (A) which is normally maintained by the agency in the regular course of business; [and] (B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining."
 
 
 4
 5 U.S.C. § 7114(b)(4)(A)(B) (emphasis added). The Navy counters that the release of the data is prohibited by law, citing the Privacy Act, 5 U.S.C. § 552a, and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Privacy Act generally prohibits the federal government from disclosing personal information about an individual without the individual's consent, 5 U.S.C. § 552a(b), but contains an exception for information which is subject to disclosure under FOIA, 5 U.S.C. § 552(b)(2). FOIA, in turn, exempts from its coverage "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) ("Exemption 6"). Application of Exemption 6 requires a balancing of the harm to the individual whose privacy is breached against the public interest served by disclosure. Department of Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). Thus, we are called upon to interpret the Exemption 6 balance between the employees' privacy interest in preventing the release of their names and home addresses against the public interest in the disclosure of such information. The structure of the analysis is such that if FOIA Exemption 6 permits the Navy to withhold the employees' names and home addresses, then FOIA does not compel their disclosure, and the Privacy Act forbids their disclosure.
 
 
 5
 This precise issue has been the subject of a torrent of recent litigation in the federal courts. A split has emerged in the circuits on this question, with the District of Columbia, First, Second, and Sixth circuits holding that disclosure of the requested data is prohibited by law, see FLRA v. Department of the Navy, Naval Resale Activity, 963 F.2d 124, 125 (6th Cir.1992) ("We believe the circuit courts that have denied enforcement of orders requiring disclosure of the information have the better side of the argument"); FLRA v. United States Department of Veterans Affairs, 958 F.2d 503, 513 (2d Cir.1992) ("Veterans Affairs") ("any invasion of privacy threatened by disclosure ... is 'clearly unwarranted' "); FLRA v. Department of the Navy, Naval Communications Unit, 941 F.2d 49, 60 (1st Cir.1991) ("Naval Communications") ("Disclosure of the employee's addresses ... would violate the Privacy Act and is not required under the Labor Statute, as neither the Privacy Act exception for disclosure required under the FOIA or the exception for disclosure pursuant to the routine use notice is applicable."); and FLRA v. Department of the Treasury, 884 F.2d 1446, 1456 (D.C.Cir.1989) ("Treasury"), cert. denied, 493 U.S. 1055, 110 S.Ct. 864, 107 L.Ed.2d 948 (1990) ("[R]elease of [employee's names and home addresses] would violate the Privacy Act"), and the Third and Ninth circuits holding that federal unions are entitled to the names and addresses of their bargaining unit employees, see FLRA v. Department of the Navy, Navy Ships Parts Control Center, 966 F.2d 747, 761 (3rd Cir.1992) (en banc) ("Navy Ships") ("federal employers must disclose home addresses under the FOIA exception to the Privacy Act"); FLRA v. Department of the Navy, Navy Resale and Services Support Office, 958 F.2d 1490, 1497 (9th Cir.1992) ("Navy Resale") (Disclosure would not constitute a "clearly unwarranted invasion of privacy"). A 2-1 decision of a panel of the Fourth Circuit also enforced the FLRA disclosure order but has been vacated pending a rehearing en banc. FLRA v. Department of Commerce, 954 F.2d 994 (4th Cir.), vacated, 966 F.2d 134 (4th Cir.1992). Because we are convinced that the release of the names and home addresses of the bargaining unit employees represented by the Union is not compelled by FOIA and is thus prohibited by the Privacy Act, we deny enforcement of the order.
 
 I.
 
 6
 Initially, we are called upon to determine the appropriate standard of review. We disagree with the FLRA's contention that its decision should be accorded significant deference because "the construction of a statute by the agency charged with administering it is entitled to deference." I.R.S. v. FLRA, 717 F.2d 1174, 1176 (7th Cir.1983). The instant case requires an interpretation of the provisions of the Privacy Act and FOIA, neither of which are labor statutes. As such, the two statutes are not within the area of expertise of the FLRA, an agency charged with administering the Labor Act. Thus, we review the FLRA's interpretation of the Privacy Act and FOIA de novo. See Navy Resale, 958 F.2d at 1493-94 ("FLRA's reasonable interpretations of the Labor Statute are entitled to judicial deference. However, FLRA has no special expertise in interpreting the Privacy Act or FOIA. Therefore, questions of law arising from those statutes are reviewed de novo."); Treasury, 884 F.2d at 1451 ("As the FLRA is not charged with a special duty to interpret either the Privacy Act or the FOIA, we do not defer to its interpretations of those statutes but review them de novo"); Naval Communications, 941 F.2d at 55 ("[T]he FLRA is not entitled to deference in its interpretation of the Privacy Act and the FOIA, which are not within the FLRA's zone of expertise."); cf. Veterans Affairs, 958 F.2d at 507 (FLRA order must be upheld if it is a permissible construction of the Labor Act) and Navy Ships, 966 F.2d at 750 (according "considerable weight" to the FLRA's construction of the Labor Act "but less deference to the FLRA's construction of the FOIA or the Privacy Act.").
 
 II.
 
 7
 We begin our analysis with a brief recitation of the extensive legal background to the Exemption 6 dispute. In 1986, the FLRA ruled that release of federal employees' names and home addresses to their unions was in the public interest and that withholding such information was an unfair labor practice under 5 U.S.C. § 7114(b)(4). Farmers Home Administration Financial Office, St. Louis, Mo., 23 F.L.R.A. (No. 101) 788 (1986), enforced in part and remanded sub. nom., United States Department of Agriculture v. FLRA, 836 F.2d 1139 (8th Cir.1988), vacated on other grounds and remanded, 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989), dismissed as moot, 876 F.2d 50 (1989). Numerous circuits then accepted the FLRA position that the information could be released, including this one in United States Department of Air Force, Scott Air Force Base, Illinois v. FLRA, 838 F.2d 229 (7th Cir.1988), cert. dismissed, 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988). In Scott, paralleling the facts of the instant dispute, a union representing civilian employees at an Air Force Base requested the home addresses of non-members so that it could communicate with them in order to better represent them. Id. at 230. Analyzing the issue solely under FOIA, we held that the release of the addresses did not amount to a "clearly unwarranted invasion of personal privacy" under Exemption 6. We reached this conclusion after conducting a balancing test comparing the "benefits and detriments of disclosure" (as required by Rose, 425 U.S. at 372, 96 S.Ct. at 1604). Id. at 232. In conducting this balancing test, we described the employee's privacy interest in their home addresses as "slight", noting that "[m]ost home addresses are in the telephone book, freely available to anyone interested." Id. at 233, 232. We recognized that some federal employees (like CIA or FBI agents) might not allow themselves to be listed in the telephone book "if their names could be associated with their occupations." Id. at 232. However, since there was no indication that any of the employees involved in Scott faced "a risk of unpleasant encounters or attention as the result of the release of home addresses," this consideration was not relevant. Id.
 
 
 8
 We began our evaluation of the public interest side of the balancing test in Scott by making clear that the identity of the requestor of the information was irrelevant to the Exemption 6 inquiry. Id. at 233. "[T]he Act clearly intended to give any member of the public as much right to disclosure as one with a special interest therein." Id. (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975)). Therefore, the relevant question was "[d]o the several uses to which many people would put the information justify its release? And the dispositive inquiry is whether there are legitimate uses, not whether we think them noble or tacky." Id. Following Reporters Committee for Freedom of the Press v. Department of Justice, 831 F.2d 1124 (D.C.Cir.1987), we held that the "privacy interest at stake here is slight; so too is the impairment. There are legitimate uses for home addresses; the union proposes one such use [to communicate with the members of the bargaining unit at their home addresses]." Id. at 233. Thus, we held the union in Scott was entitled under FOIA Exemption 6 to the names and home addresses it sought.
 
 
 9
 The "entire corpus of decisional law" of which Scott was a part "was put into question by the Supreme Court" when it reversed the D.C. Circuit's Reporters Committee for Freedom of the Press opinion (upon which we had relied in Scott ) in United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("Reporters Committee"). Veterans Affairs, 958 F.2d at 506. We are thus required to reconsider our holding in Scott that under the FOIA Exemption 6 balancing test the public interest in disclosure of the names and home addresses of federal employees outweighs the employees' resulting loss of privacy.[1]
 
 A. The Privacy Interest in Non-Disclosure
 
 10
 We now turn to the threshold question of the FOIA Exemption 6 analysis: whether federal employees have any privacy interest in the non-disclosure of their names and home addresses. In Scott, we termed this interest "slight", especially in light of the fact that home addresses are "widely disseminated" in telephone books and on mailing lists, but we recognized that some federal employees might be endangered by the release of their home addresses. 838 F.2d at 232, 233.
 
 
 11
 As other circuits have reasoned, the privacy interest implicated here is in the release of an individual's name in association with his employment position in the federal government. For purposes of defining this privacy interest,
 
 
 12
 "that one's name and address may itself be public is not dispositive. Because such information is itself generally not of much use, the public availability of the information sought must be measured in terms of the 'defining characteristic' associated with the list--here federal employment.... [I]t cannot be said that one's name and address, coupled with that individual's status as a federal employee ... is generally publicly available."
 
 
 13
 Veterans Affairs, 958 F.2d at 511. The District of Columbia Circuit in Treasury noted that entrepreneurs have filed FOIA requests for "specific names of classes of current government employees in order to aid them in business solicitation." 884 F.2d at 1452 (emphasis added). Thus, at a minimum, release of the federal employees' names and home addresses can be expected to increase the quantity of mail solicitation to which they will be subjected. As we said in Scott, "mail does not substantially impinge on seclusion; the addressee may send it to the circular file," 838 F.2d at 232 (emphasis added), but there is no gainsaying that some degree of privacy is lost. As Judge Fernandez reasoned in his dissent in Navy Resale,
 
 
 14
 "[T]he privacy interest involved here has been characterized in many ways by many judges. One fears that the varying characterizations have little to do with law and a good deal to do with the value that each judge places upon this kind of privacy. I, for one, give it substantial weight. At any rate, everyone agrees that it has some weight.... [T]he lists the unions seek ... reveal much more than names and addresses. They also reveal the fact that an employee works for a particular agency of the government, and, depending on the focus of the particular union, they may also reveal the kind of work the person does. For example, one supposes that a list obtained by an airport controllers union would contain information about airport controllers.
 
 
 15
 958 F.2d at 1498 (Fernandez, J., dissenting). We find this analysis most persuasive and hold that federal employees have a privacy interest in the non-disclosure of their names and home addresses. See also Veterans Affairs, 958 F.2d at 511 ("In light of the Congress' recognition in FOIA and the Privacy Act of the threat to privacy that is occasioned by compilations of this type of data, we are compelled to conclude that a more than de minimis privacy interest is threatened by the disclosure" of the federal employees' names and home addresses.); Naval Communications, 941 F.2d at 55-56 ("[W]e believe a discernable interest exists in the ability to retreat to the seclusion of one's home and to avoid enforced disclosure of one's address. While of modest strength, this interest is nonetheless real enough to be worthy of recognition and protection in appropriate circumstances."); Navy Ships, 966 F.2d at 756 ("home addresses implicate a meaningful privacy interest").
 
 B. The Public Interest in Disclosure
 
 16
 Having held that the proposed disclosure infringes a privacy interest, we turn now to the portion of our analysis in Scott most directly affected by Reporters Committee: the definition of the public interest in disclosure under FOIA. Reporters Committee involved a request by the media for the "rap sheets" (criminal identification records) of an individual allegedly involved with a company which had obtained a number of defense contracts as a result of an improper arrangement with a corrupt Congressman. 489 U.S. at 756-58, 109 S.Ct. at 1473. The FBI denied the rap sheet request, relying in part on FOIA's exemption for "records ... compiled for law enforcement purposes," the disclosure of which could reasonably be expected to "constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) ("Exemption 7").[2] In defining the public interest in disclosure of the rap sheet, the Supreme Court stated that "FOIA's central purpose is to ensure that the Government's activities be opened up to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." Id. 489 U.S. at 774, 109 S.Ct. at 1482. FOIA's purpose, to allow citizens to know "what their government is up to", the Court reasoned, is not "fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." Id., 489 U.S. at 773, 109 S.Ct. at 1481. "[W]hether disclosure of a private document ... is warranted must turn on the nature of the requested document and its relationship of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." Id. (citation omitted). The Court concluded that since the disclosure of the rap sheet would reveal no information about the activities of a federal agency, no public interest cognizable under FOIA existed to be weighed against the invasion of privacy likely to result from such disclosure. Id., 489 U.S. at 773-75, 109 S.Ct. at 1482. See also Silets v. United States Department of Justice, 945 F.2d 227, 229 (7th Cir.1991) (en banc ), cert. denied, --- U.S. ----, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992) (holding that a federal agency may edit the names and identifying information of private parties from documents that otherwise reveal the operations and activities of the agency because FOIA's central purpose is to shed light on the government's activities (citing Reporters Committee )).
 
 
 17
 Reporters Committee thus defines the public interest in disclosure under FOIA as bringing the activities of the government out into the open. If a FOIA disclosure request would not reveal information about the government's operations, then it is not in the public interest. The FLRA disagrees with this reading of Reporters Committee and argues that the public interest in disclosure should not be drawn so narrowly. Pointing to the Labor Act's express recognition that "labor organizations and collective bargaining are in the public interest," 5 U.S.C. § 7101(a), the FLRA maintains that the facilitation of the collective bargaining process which would result from the release of the employees' names and home addresses should be considered in measuring the public interest in disclosure. In support of this argument, the Union argues that Reporters Committee should not be applied to the instant case because the Union made its disclosure request under the Labor Act, whereas the rap sheet request in Reporters Committee arose directly under FOIA. The Ninth Circuit in Navy Resale, 958 F.2d at 1496, and the Third Circuit in Navy Ships, 966 F.2d at 758, adopted this argument to support their holding that the public interest in federal sector collective bargaining could be weighed in the FOIA balance. As the Third Circuit put it, "the theory underlying FOIA disclosure, as represented in Reporters Committee, is inapplicable in disclosure cases sought under the Labor statute." Id.
 
 
 18
 The problem with this approach, it seems to us, is that the Labor Act itself by authorizing disclosure "not prohibited by law" directs us to the Privacy Act, which in turn directs us to FOIA. See Treasury, 884 F.2d at 1457 (Ruth Bader Ginsburg, J., concurring) (the interplay of the Labor and Privacy Acts places the Exemption 6 analysis "wholly within FOIA's domain"). Section 552a(b)(2) of the Privacy Act makes an exception to its general rule against disclosure for information available under FOIA. Neither it, nor FOIA, makes a further exception for information requests that originate under some other federal statute. "We do not believe we are entitled to engage in the sort of imaginative reconstruction that would be necessary to introduce collective bargaining values into the [FOIA] balancing process." Treasury, 884 F.2d at 1453.
 
 
 19
 As we made clear in Scott, FOIA does not permit judges to determine which disclosure requests are in the public interest and which are not. 838 F.2d at 233. FOIA says that "any person may obtain information. 5 U.S.C. § 552(a)(3). Either all requestors have access, or none do. The special needs of one, or the lesser needs of another, do not matter." Id. What Reporters Committee adds to this analysis is that the only public interest cognizable under FOIA is the interest of the citizenry in obtaining information about the activities of its government. 489 U.S. at 771, 109 S.Ct. at 1481. In Scott, as we noted above, we held that any disclosure was in the public interest for purposes of FOIA Exemption 6 analysis so long as the requestor proposed a "legitimate" use for the information. 838 F.2d at 233. Since the union had proposed one such legitimate use (communicating with its bargaining unit employees in order to better represent them), we concluded that this interest overcame the privacy interest in nondisclosure. Id. After Reporters Committee, this analysis is no longer valid. In determining the public interest in disclosure, we may consider only whether the core purpose of FOIA, letting the citizenry know what its government is up to, will be served by release of the employees' home addresses. The release of the names and home addresses of federal employees will not serve that purpose.[3] Thus, we conclude that the Union's argument alleging a public interest in disclosure fails.
 
 C. Balancing
 
 20
 If there is no public interest in disclosure, then any loss of privacy resulting from the release of the names and home addresses allows the Navy, pursuant to Exemption 6, to withhold the information from the Union. As we said in Scott, "[e]ven a modest disclosure could be 'clearly unwarranted' if there were no reason for it. Incurring a harm for no gain is 'clearly unwarranted.' " Scott, 838 F.2d at 232. "There is no relevant public purpose to be weighed against [the] threatened invasion. Hence, any invasion of privacy threatened by disclosure ... is 'clearly unwarranted.' " Veterans Affairs, 958 F.2d at 513. FOIA thus does not compel disclosure of the names and home addresses sought by the Union.
 
 III.
 
 21
 The Union contends that denying it access to the names and home addresses of the employees in the bargaining unit it represents is wrong because private sector unions are generally able to obtain a list of employees' names and addresses. Our charge is to interpret statutes as they are written, and not to revise them by reading into them policies we deem advisable. Absent Congressional action to redraft the Labor or Privacy Acts or FOIA, or a reconsideration by the Supreme Court of Reporters Committee, we are bound to reach today's result. Disclosure of federal employees' names and home addresses to their exclusive bargaining representative constitutes a "clearly unwarranted invasion of personal privacy" under FOIA Exemption 6. Since FOIA does not compel the disclosure, the Privacy Act prohibits it. The Navy's petition for review is GRANTED and the FLRA's application for ENFORCEMENT of its order is DENIED.
 
 
 
 *
 Because this opinion overrules United States Department of Air Force, Scott Air Force Base, Illinois v. FLRA, 838 F.2d 229 (7th Cir.), cert. dismissed, 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988), it has been circulated among all judges of this court in regular active service pursuant to Rule 40(f). A majority of the court did not favor a rehearing en banc. Judge Cudahy voted to hear the case en banc. Judge Flaum and Judge Ripple took no part in the consideration or decision of this matter
 
 
 [1]
 This is the only issue we will address in this opinion. The Navy argues in a footnote in its brief that an alternative ground for holding that it is not required to divulge the employees' names and home addresses is that the information is not "necessary for full and proper discussion, understanding and negotiation of subjects within the scope of collective bargaining" as required under § 7114(b)(4)(B) of the Labor Act (emphasis added). The Navy maintains that the term "collective bargaining", as defined in the Act, refers only to the actual process of contract negotiations and agreement, not to subsequent representation or other activities by a union on behalf of its members. See 5 U.S.C. § 7103(a)(12). Our holding that the disclosure of the employees' names and home addresses is prohibited by law makes it unnecessary for us to reach this argument. Moreover, arguments raised in passing in a footnote are waived. United States v. White, 879 F.2d 1509, 1513 (7th Cir.1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990)
 We also note that the FOIA exception to the Privacy Act is the only relevant exception in this case. The Privacy Act also has an exception which allows the disclosure of records "for a routine use". 5 U.S.C. § 552a(b)(3). Federal agencies are authorized to publish in the federal register a notice of the existence of their records and the routine uses to which they are put. 5 U.S.C. § 552a(a)(7), (e)-(e)(4)(D). The Office of Personnel Management (OPM) is the agency charged with maintaining records of federal employees' names and home addresses. OPM's notice of the routine uses for employees' personnel records includes their disclosure to labor organizations under certain limited circumstances. Privacy Act of 1974: Publication of Notices of Systems of Records and Proposed New Routine Use, 49 Fed.Reg. 36,949, 36,955-56 (Sept. 20, 1984). However, both the Navy and the FLRA state in their briefs, citing 5 U.S.C. § 2105(c), that the employees involved in the instant case are not subject to the OPM regulations or notices because they are employed by the Navy Exchange. Therefore, because both parties agree that the routine use exception is not applicable to this case and consequently have not litigated the question we express no opinion as to the scope or validity of this exception to the Privacy Act.
 
 
 [2]
 Although Reporters Committee involved FOIA Exemption 7, its definition of the public interest in disclosure in FOIA cases is binding on us here, even though this dispute arises under FOIA Exemption 6. As the District of Columbia Circuit stated,
 "[a]lthough the context in Reporters Committee was the special privacy exemption for law enforcement records, [exemption 7], we see no reason why the character of the disclosure interest should be different under exemption 6. While exemption 6 precludes only 'a clearly unwarranted invasion of personal privacy' (emphasis added), that difference between it and [exemption 7] goes only to the weight of the privacy interest needed to outweigh disclosure."
 Treasury, 884 F.2d at 1451-52. See also Navy Resale, 958 F.2d at 1493 n. 2; Veterans Affairs, 958 F.2d at 509-10. This conclusion is buttressed by the fact that Reporters Committee relied extensively on Department of Air Force v. Rose, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), an Exemption 6 case. 489 U.S. at 768-69, 109 S.Ct. at 1479.
 
 
 [3]
 The District of Columbia Circuit speculated that the only possibly relevant public interest in the release of the employees' home addresses would be to make the work of an investigative reporter attempting to ferret out "what the government is up to" easier. Treasury, 884 F.2d at 1452. But as the Treasury court itself recognized, that interest was virtually negligible since a "zealous investigator has an alternative means of access to current workers ... -face-to-face conversation attained simply by following other leads and roaming government hallways." Id. Moreover, "[c]ompelling disclosure of personal information, that has no relationship to an agency's activities, on so attenuated a basis would inevitably result in the disclosure of virtually all personal information, thereby effectively eviscerating the protections of privacy provided by Exemption 6." Veterans Affairs, 958 F.2d at 512. This speculative public interest discussed by the District of Columbia Circuit seems to us to be a species of what the Supreme Court has defined as a "derivative use" of FOIA-disclosed information: "the potential that additional, publicly valuable information may be generated by further investigative efforts that disclosure of the [names and home addresses] will make possible." United States Department of State v. Ray, --- U.S. ----, 112 S.Ct. 541, 550, 116 L.Ed.2d 526 (1991) (Scalia, J., concurring in part and concurring in judgment). The Supreme Court has abstained from deciding whether derivative uses may be considered in determining whether there is a public interest in disclosure under FOIA. Id., --- U.S. at ----, 112 S.Ct. at 549-50. We need not address this question because we agree with the Veterans Affairs court that virtually any piece of information about a government employee could possibly provide some assistance to an investigative reporter researching a story. To find a public interest in disclosure on so attenuated a basis would dismantle the privacy protections Congress erected through Exemption 6